FILED

2006 JUN -6 AM 10:51

MECKLENBURG COUNTY. C.S.C.

NORTH CAROLINA                          IN THE GENERAL COURT OF JUSTICE
                                                    SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                            05 CvS 10328

|  |  |
|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| EUGENE B. JOHNSON, DANIEL G. BERGSTEIN, KELSO INVESTMENT ASSOCIATES V, L.P., KELSO EQUITY PARTNERS V, L.P., FRANK K. BYNUM, JR., GEORGE E. MATELICH, KELSO & COMPANY and FAIRPOINT COMMUNICATIONS, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT**
**(AOC CODE---CMPT)**

Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff and Plaintiff's counsel, based upon the investigation undertaken by Plaintiff's counsel (which investigation included analysis of publicly available news articles and reports, public filings, securities analysts' reports and advisories about FairPoint Communications, Inc. ("FairPoint" or the "Company"), press releases and other public statements issued by the Company, and media reports about the Company) and believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

Case 3:05-cv-00316-FDW-CH   Document 1-1   Filed 07/11/05   Page 1 of 30

## PARTIES

1.      Plaintiff Robert Lowinger is a citizen and resident of New York and purchased 100 shares of FairPoint common stock in the IPO (defined below) and has been damaged thereby.

2.      Defendant Eugene B. Johnson ("Johnson") is a co-founder of the Company as well as the Chairman of the Board of Directors and Chief Executive Officer.

3.      Defendant Daniel G. Bergstein ("Bergstein") is a co-founder of the Company and at the time of the IPO a director of the Company.  Bergstein either personally or on behalf of a family company known as JED Communications Associates, Inc. or on behalf of other family members sought to sell up to 83,768 shares of FairPoint common stock in a planned over-allotment for the IPO.

4.      Defendant Kelso Investment Associates V, L.P. ("Kelso Associates") is an investment fund which planned to sell 3,112,861 shares of the Company's common stock in the IPO.

5.      Defendant Kelso Equity Partners V, L.P. ("Kelso Equity") is an investment fund under common control with defendant Kelso Associates which sought to sell 335,729 shares of the Company's common stock in an over-allotment planned with respect to the IPO.

6.      Defendant Kelso & Company ("Kelso") at all relevant times was a general partner of Kelso Associates and Kelso Equity.  Kelso, pursuant to the terms of an agreement it had with FairPoint, received an $8,400,000 transaction fee upon consummation of the IPO.

7.      Defendant Frank K. Bynum, Jr. ("Bynum") is, and at all relevant times was, a director of the Company and a Managing Director of Kelso.  Bynum was

2

designated to the Board of Directors by Kelso pursuant to its rights under a stockholders agreement.

8.     Defendant George E. Matelich ("Matelich") is, and at all relevant times was, a director of the Company and a Managing Director of Kelso. Matelich was designated to the Board of Directors by Kelso pursuant to its rights under a stockholders agreement.

9.     Defendant FairPoint is a Delaware corporation maintaining operations in 17 states and maintaining its principal executive offices at 521 East Morehead Street, Suite 250, Charlotte, North Carolina 28202. FairPoint describes itself as "a leading provider of communications services to rural communities, offering an array of services, including local and long distance voice, data, Internet and broadband product offerings."

## NATURE OF THE ACTION

10.     This is a securities class action on behalf of a class (the "Class") of persons who purchased shares of FairPoint issued pursuant to the initial public offering ("IPO") of FairPoint common stock. FairPoint is a holding company for rural telephone companies throughout the United States which conducted an IPO commencing on February 3, 2005 in which a total of 25,000,000 shares were sold to members of the investing public. The representations made in connection with the sale of FairPoint shares in the IPO were materially false or misleading because they failed to disclose: (1) a slowdown in the marketing of data and internet services; and (2) the decline in telephone access lines was accelerating. At the time these facts and their effects on the Company's operating results and future business prospects were fully disclosed, the price

3

of the Company's common stock declined causing Plaintiff and other members of the

Class to suffer damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 11,

12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act") [15 U.S.C. §§77k,

77l(a)(2) and 77o].

12.     This Court has jurisdiction of this action pursuant to Section 22 of the

Securities Act [15 U.S.C. §77v] which vests state courts with concurrent jurisdiction over

cases asserting Securities Act claims.

13.     Venue is properly laid in this Court because FairPoint, the company

whose IPO is at issue in this action, is headquartered within this District.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

14.     Plaintiff brings this action as a class action pursuant to North Carolina

Rules of Civil Procedure 23(a) and 23(b) on behalf of himself and all persons who

purchased the common stock of FairPoint issued pursuant and/or traceable to the

Company's IPO during the period from February 3, 2005 through March 21, 2005,

inclusive.  Excluded from the Class are Defendants herein, members of the immediate

family of each of the Defendants, any person, firm, trust, corporation, officer, director or

other individual or entity in which any Defendant has a controlling interest or which is

related to or affiliated with any of the Defendants, and the legal representatives, agents,

affiliates, heirs, successors-in-interest or assigns of any such excluded party.

15.     The members of the Class are so numerous that joinder of all members is

impracticable.  Approximately 25 million shares of the Company's common stock were

4

sold in the IPO. The precise number of Class members is unknown to Plaintiff at this time but is believed to be in the thousands. In addition, the names and addresses of the Class members can be ascertained from the books and records of FairPoint or its transfer agent or the underwriters for the IPO. Notice can be provided to such record owners by a combination of published notice and first-class mail, using techniques and a form of notice similar to those customarily used in class actions arising under the federal securities laws.

16.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation under the federal securities laws to further ensure such protection and intends to prosecute this action vigorously.

17.     Plaintiff's claims are typical of the claims of the other members of the Class because plaintiff's and all the Class members' damages arise from and were caused by the same false and misleading representations and omissions made by or chargeable to Defendants. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class.

18.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

5

19.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a)    Whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    Whether the Prospectus and Registration Statement issued by Defendants to the investing public in connection with the IPO omitted and/or misrepresented material facts about FairPoint and its business; and

(c)    The extent of injuries sustained by members of the Class and the appropriate measure of damages.

## SUBSTANTIVE ALLEGATIONS

20.    FairPoint operates and acquires incumbent telephone companies in rural markets. As of the time of the IPO, the Company owned 26 such rural telephone companies operating in 17 states with approximately 272,691 access line equivalents making FairPoint the 17th largest local telephone company in the country.

21.    A major change sweeping the telecommunications industry over the past several years has been the popularization of the Internet. Initially this resulted in the demand for additional access lines but, as technology has evolved, for digital subscriber lines ("DSL").

22.    FairPoint accessed the public equity markets through the IPO, which was accomplished pursuant to a prospectus (the "Prospectus") filed with the SEC as part of a Form S-1 registration statement (the "Registration Statement"). FairPoint offered and

sold 25,000,000 shares of FairPoint common stock to Plaintiff and the other members of the investing public at a price of $18.50 per share.

23. The Prospectus marketed the Company as being in a unique environment of limited competition combined with evidence of increasing revenue growth from the offering of DSL services. Thus, page 1 of the Prospectus described the rural telephone market as follows:

> Rural local exchange carriers generally are characterized by stable operating results and strong cash flow margins and operate in supportive regulatory environments. In particular, existing state and federal regulations permit them to charge rates enabling them to recover operating costs, plus a reasonable rate of return on our invested capital (as determined by relevant regulatory authorities). Competition is typically limited because rural local exchange carriers primarily serve sparsely populated rural communities with predominantly residential customers, and the cost of operations and capital investment requirements for new entrants is high.

24. Almost directly thereafter, on page 1 of the Prospectus, Defendants touted the "[t]echnologically advanced infrastructure." (Emphasis in original). This enabled FairPoint "to provide a wide array of communication services, *including digital subscriber lines.*" (Emphasis added).

25. On page 2 of the Prospectus under a heading titled "**Our Strategy,**" the Prospectus described the first element of the Company's strategy as follows:

> **Increase revenue per customer**. We are focused on increasing our revenues by introducing innovative product offerings and marketing strategies for enhanced and ancillary services and successfully cross-selling broadband and value-added services, such as digital subscriber lines, long distance, Internet dial-up, voicemail and other services, to our customers. (Emphasis in original)

26. Indeed, at the time of the IPO, FairPoint was reporting impressive increases in Internet related services and the accompanying revenues. Thus, the Prospectus reported in a tabular form (on page 44) that for the year ended December 31,

2003 revenues from "Data and Internet services" had increased to $13,431,000 for the year ended December 31, 2003 compared to $10,257,000 and $7,684,000 for the years ended December 31, 2002 and December 31, 2001, respectively. More impressively, the Prospectus reported that such data and Internet services revenues had increased to $13,550,000 for the nine months ended September 30, 2004, more than the revenues for the entire prior year and representing a more than 40% increase over the $9,585,000 in revenues for the nine months ended September 30, 2003.

27.    In discussing these results of operations, the Prospectus (on page 48) stated that:

> *Data and Internet services.* Data and Internet services revenues increased $4.0 million from $9.6 million in 2003 to $13.6 million in 2004. This increase is due primarily to increases in digital subscriber line customers as we continue to aggressively market our broadband services. Our digital subscriber line subscribers increased from 12,271 as of September 30, 2003 to 30,420 as of September 30, 2004, a 148% increase during this period.

28.    The Prospectus's discussion of the Company's DSL business was materially false or misleading because the statements failed to disclose that the Company was intentionally slowing down the rate of growth in DSL lines in order to become more selective in adding customers and managing churn (*i.e.*, customer turnover). In fact, there was only a 4.8% increase in DSL subscribers sequentially from the third quarter to the fourth quarter of 2004, a rate dramatically below the more than 40% increase that had taken place earlier in the year.

29.    In addition to making the above-referenced statements materially false or misleading, the Prospectus was also materially false or misleading because of its failure to comply with the requirements of the Securities Act in making disclosures. Specifically, Item 11(h) of Form S-1 mandates the disclosure of information required by

Item 303 of Regulation S-K. That regulation, in turn, requires disclosure of, among other things, "any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." The dramatic slowdown in the addition of DSL customers was precisely such a known trend which was required to be disclosed but, in fact, remained undisclosed by the Prospectus.

30.     The Prospectus also was materially misleading in its description of the revenue generated by voice and data services over access lines. The Prospectus does note that the Company had experienced a net voice access line loss of 2.6% for the period from September 30, 2003 through September 30, 2004. The Prospectus then goes on to state (at page 16) that "[w]e may continue to experience net access line loss in our markets." That statement was materially false or misleading because, in truth and in fact, the Company has already experienced an accelerated decline of 3.0% in access lines. Thus, the continuing decline as well as its accelerating rate was no mere possibility but was, in fact, a living reality at the time of the IPO.

31.     Defendants' portrayal of the Company was accepted by the investing public as reflected in an analyst report issued by Morgan Stanley on March 16, 2005, recommending purchase of the Company's stock and setting a price target of $21 per share. That analyst report focused on access line loss below other telephone companies and that "[g]rowth in revenues from long distance and DSL should help sustain revenue and cash flow . . . ."

9

32.     On March 21, 2005, after the market close, FairPoint issued a press release announcing its results for the fourth quarter ended December 31, 2004.  Among other things, the press release disclosed that:

> In the fourth quarter, voice access lines decreased by 2,997, compared to 1,828 in the third quarter of 2004. Correspondingly, DSL subscriber growth in the fourth quarter of 2004 was 1,456 compared to 2,069 in the third quarter 2004. In the fourth quarter the company controlled DSL growth striving for greater profitability and reduced churn contrasted against an aggressive sales promotion / customer penetration strategy pursued earlier in the year.

33.     On March 23, 2005, the Company conducted a conference call with securities analysts in which it elaborated on FairPoint's results for the quarter.  During the call Defendant Johnson stated that DSL growth slowed in the fourth quarter because the Company "managed that process intentionally to become more selective in adding customers and managing churn."

34.     The reaction by the investing public to the disclosures in the press release and the conference call was adverse, as reflected in an action by a securities analyst at the CIBC World Markets brokerage house by initiating coverage of FairPoint with an underperformer rating, which was tantamount to a recommendation to sell the stock.   In reaction to these developments, the price of FairPoint common stock declined to close at approximately $14.92 per share on March 23, 2005, representing a substantial decline from its IPO price of $18.50 per share.

## COUNT I

**[Against Defendants FairPoint, Johnson, Bergstein, Bynum
and Matelich for Violations of Section 11 of the Securities Act]**

35.     Plaintiff repeats and realleges each and every allegation contained above.

10

36.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against Defendants Johnson, Bergstein, Bynum and Matelich (the "Individual Defendants") and FairPoint.

37.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed adequately to disclose material facts as described above.

38.     FairPoint is the registrant for the IPO. The Defendants named herein were responsible for the contents and dissemination of the Registration Statement and the Prospectus.

39.     As issuer of FairPoint's common stock, the Company is strictly liable to Plaintiff and the Class for the misstatements and omissions alleged herein.

40.     The Individual Defendants each signed the Registration Statement either personally or through an Attorney-in-Fact and/or caused its issuance. The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Registration Statement. They had a duty to ensure that such statements were true and accurate and that there were no omissions of material facts that would make the statements made misleading. These Defendants failed to do so. None of the Individual Defendants made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement and the Prospectus were true and without omissions of any material facts and were not misleading.

11

41.     The Defendants named herein issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Registration Statement and Prospectus, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated, Section 11 of the Securities Act.

42.     Plaintiff acquired FairPoint common stock issued pursuant to the Registration Statement.

43.     Plaintiff and the other members of the Class have sustained damages. The value of FairPoint common stock has declined substantially subsequent to and due to Defendants' violations as described herein.

44.     At the times they purchased Fairpoint common stock, Plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts prior to March 21, 2005. Less than two years elapsed from the time that Plaintiff discovered or reasonably could have discovered the facts upon which this Complaint is based to the time that Plaintiff filed this Complaint. Less than five years elapsed between the time that the securities upon which this Count is brought were offered to the public and the time Plaintiff filed this Complaint.

## COUNT II

**[Against Defendants FairPoint, Bergstein, Kelso, Kelso Advisers and Kelso Equity for Violations of Section 12(a)(2) of the Securities Act]**

45.     Plaintiff repeats and realleges each and every allegation contained above.

46.     This Count is brought pursuant to Section 12(a)(2) of the Securities Act on behalf of the Class, 15 U.S.C. §77l(a)(2), against Defendants FairPoint, Bergstein, Kelso, Kelso Advisers and Kelso Equity.

47.     The Defendants named in this Count sold, offered or solicited the purchase of FairPoint common stock for their own personal profit pursuant to the Prospectus. Defendants issued, caused to be issued, and/or signed the Registration Statement in connection with the IPO. The Registration Statement contained a Prospectus, which was used to induce investors, such as the Plaintiff and the other members of the Class, to purchase FairPoint common stock.

48.     The Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts. The Defendants named in this Count acts of solicitation included participating in the preparation of the false and misleading Prospectus. Defendant Kelso received $8.4 million after the successful consummation of the IPO. In addition, Defendants Bergstein, Kelso Advisers and Kelso Equity sought to sell shares of FairPoint they owned pursuant to the Prospectus.

49.     FairPoint and the Individual Defendants, owed Plaintiff and the other members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus to ensure that such statements were true and that there was no omission of material facts required to be stated in order to make the statements contained therein not misleading. Defendants knew of, or in the exercise of reasonable care by their employees and agents, should have known of, the misstatements

13

and omissions contained in the IPO materials, including the Prospectus, as set forth above.

50.     Plaintiff and other members of the Class purchased or otherwise acquired FairPoint common stock pursuant to and/or traceable to the defective Prospectus. Plaintiff did not know, nor in the exercise of reasonable diligence could have known, of the untruths and omissions contained in the Prospectus.

51.     By reason of the conduct alleged herein, the Defendants named in this Count violated §12(a)(2) of the Securities Act.  Accordingly, Plaintiff and members of the Class who hold FairPoint common stock purchased in the IPO have the right to rescind and recover the consideration paid for their FairPoint common stock and hereby elect to rescind and tender their FairPoint common stock to the Defendants named in this Count in return for the consideration paid for those securities together with interest thereon.   Plaintiff and Class members who have sold their FairPoint common stock are entitled to rescissory damages.

## COUNT III

### [Against Defendants Johnson, Bynum, Matelich and Kelso for Violations of Section 15 of the Securities Act]

52.     Plaintiff repeats and realleges each and every allegation contained above.

53.     This Count is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. §77o, against Defendants Johnson, Bynum, Matelich and Kelso.

54.     Defendant Kelso as the general partner of Kelso Equity and Kelso Associates had the ability to, and did, control the affairs of Kelso Equity and Kelso Associates.  In addition, Defendants Bynum and Matelich as managing directors of defendant Kelso and as the persons at Kelso responsible for the investment in FairPoint

14

had the ability to, and did, control the affairs of defendants Kelso Equity and Kelso Associates with respect to their investment in FairPoint. Kelso, Bynum and Matelich are, therefore, liable under Section 15 for any Section 12(a)(2) violations committed by defendants Kelso Equity and Kelso Associates.

55.      Defendant Kelso is also liable as a control person with respect to the Section 11 violations by FairPoint. Kelso was a major shareholder of FairPoint prior to the consummation of the IPO, provided certain consulting and advisory services to the Company, had representatives serving on FairPoint's board of directors and was a party to a shareholder agreement with other major FairPoint shareholders.

56.      Defendant Johnson was a control person of FairPoint by virtue of his position as an officer and director of the Company. He had the power to control or influence the issuer to engage in the wrongful conduct complained of herein, including the issuance of the false and misleading statements and omissions in the Registration Statement and Prospectus.

57.      Each of the Defendants named in this Count was a culpable participant in the violations of Sections 11 and 12(a)(2) of the Securities Act alleged in Counts I and II above, based on their having signed the Registration Statement and/or having otherwise participated in the process which allowed the IPO to be successfully completed. None of these Defendants named in this Count made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement, including the Prospectus, were true and devoid of any omissions of material facts. Therefore, by reason of their positions of control, as alleged herein, each of these

Defendants is jointly and severally liable to Plaintiff and the other members of the Class as a result of the wrongful conduct alleged herein.

58. Plaintiff and the other members of the Class who acquired FairPoint stock pursuant to the Registration Statement and Prospectus did so without knowledge of the materially untrue statements and omissions therein. As a direct and proximate result of these Defendants' wrongdoing, Plaintiff and the other members of the Class have suffered substantial damages.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the other members of the Class, prays for judgment as follows:

(a) declaring this action to be a Plaintiff class action properly maintained pursuant to Rule 23(a) and Rule 23(b) of the North Carolina Rules of Civil Procedure, certifying the Class and certifying their counsel as Class Counsel;

(b) awarding Plaintiff and other members of the Class damages in excess of Ten Thousand Dollars ($10,000.00) against Defendants, jointly and severally, together with interest thereon;

(c) awarding Plaintiff and the other members of the Class rescission on Count II to the extent they still hold FairPoint common stock, or if sold, awarding rescissory damages in accordance with Section 12(a)(2) of the Securities Act;

(d) awarding Plaintiff and other members of the Class their costs and expenses of this litigation, including reasonable attorneys' fees, accountants' fees and experts' fees and other costs and disbursements; and

(e) awarding Plaintiff and other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

This the 2nd day of June, 2005.

DONALDSON & BLACK, P.A.

By: _____
John T. O'Neal
N.C. Bar Number 23446
208 West Wendover Avenue
Greensboro, NC 27401
Telephone: (336) 273-3812
Facsimile  (336) 510-2172

OF COUNSEL:

**ABRAHAM, FRUCHTER & TWERSKY LLP**
Jeffrey S. Abraham (JA-2946)
One Penn Plaza, Suite 2805
New York, NY 10119
Telephone: (212) 279-5050
Facsimile:  (212) 279-3655

**Counsel for Plaintiff**

Case 3:05-cv-00316-FDW-CH   Document 1-1   Filed 07/11/05   Page 17 of 30

NORTH CAROLINA IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
MECKLENBURG COUNTY

| | | |
|---|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | 05 CvS _____ |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) ) | **VERIFICATION AND CERTIFICATION OF COMPLAINT** |
| EUGENE B. JOHNSON, DANIEL G. BERGSTEIN, KELSO INVESTMENT, ASSOCIATES V, L.P., KELSO EQUITY PARTNERS V, L.P., FRANK K. BYNUM, JR., GEORGE E. MATELICH, KELSO & COMPANY and FAIRPOINT COMMUNICATIONS, INC., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

I, Robert Lowinger, being first duly sworn, say:

1.   I have read the contents of my Complaint prepared by counsel in the above-captioned action and they are true to the best of my knowledge, except as to matters stated upon information and belief and, as to those, I believe them to be true. I have authorized the filing of the Complaint.

2.   I did not purchase the security that is the subject of the Complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3.   I am willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

-1-

4. During the proposed Class Period, I executed the following trades of FairPoint Communications, Inc. securities: I purchased 100 shares of common stock on February 3, 2005 at $18.50 per share.

5. In the past three years, I have sought to serve as a representative party on behalf of a class in an action filed under the federal securities laws in two actions: In re Adelphia Sec. Litig., and Lowinger v. New York Community Bancorp, Inc.

6. I will not accept payment for serving as a representative party on behalf of a class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this
____ day of May, 2005.

_Robert Lowinger_ (signature)

Robert Lowinger

Sworn to and subscribed before me
this _4_ day of _May_, 2005.

_alfn M_ (signature)

Notary Public
My Commission Expires: _____

ALYSON WALFISH
Notary Public, State of New York
No. 01WA6080443
Qualified in Queens County
Commission Expires 09/16/06

-2-

NORTH CAROLINA

MECKLENBURG COUNTY

05 CvS 10328

ROBERT LOWINGER, Individually )
and On Behalf of All Others )
Similarly Situated, )
                                               )

        Plaintiffs, )
                                               )

        v. )                 AFFIDAVIT OF SERVICE
                                             )

EUGENE B. JOHNSON, DANIEL G. )
BERGSTEIN, KELSO INVESTMENT )
ASSOCIATES V, L.P., KELSO EQUITY )
PARTNERS V, L.P., FRANK K. BYNUM, JR., )
GEORGE E. MATELICH, KELSO & COMPANY )
and FAIRPOINT COMMUNICATIONS, INC., )
                                               )

        Defendants. )
                                               )

John T. O'Neal, being first duly sworn, deposes and says that:

1.      I am the attorney for the Plaintiffs in this pending civil action.

2.      A copy of the Summons and Complaint was deposited in the U. S. Post Office, postage prepaid, on June 10, 2005, by certified mail, return receipt requested.

3.      The copy of the Summons and Complaint was mailed to:

                FairPoint Communications, Inc.
                c/o CT Corporation, Registered Agent
                225 Hillsborough Street
                Raleigh, NC 27603

4.      Process was in fact received on June 13, 2005, as evidenced by the attached return receipt.

                                                              _____

                                                   John T. O'Neal
                                                 N. C. State Bar No. 23446
                                                 Donaldson & Black, P.A.
                                                 208 West Wendover Avenue
                                                 Greensboro, North Carolina 27401
                                                 336-273-3812

Sworn to and subscribed before me,
this the 15th day of June 2005.



Notary Public

My Commission Expires: *April 24, 2007*

DAPHNE W. HAMMILL
NOTARY PUBLIC
GUILFORD COUNTY, N. C.
My Commission Expires April 24, 2007

# STATE OF NORTH CAROLINA

FILED

MECKLENBURG County

25 JUN 16 AM 11: 16

In The General Court Of Justice
☐ District ☒ Superior Court Division

| Name Of Plaintiff | |
| --- | --- |
| ROBERT LOWINGER, Individually, et al | |

**Address**

**City, State, Zip**

# CIVIL SUMMONS

☐ **ALIAS AND PLURIES SUMMONS**

G.S. 1A-1, Rules 3, 4

## VERSUS

| Name Of Defendant(s) | |
| --- | --- |
| EUGENE B. JOHNSON, DANIEL G. BERGSTEIN, KELSO INVESTMENT ASSOCIATES V, L.P., KELSO EQUITY PARTNERS V, L.P., et al | |

Date Original Summons Issued

Date(s) Subsequent Summons(es) Issued

## To Each Of The Defendant(s) Named Below:

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
| --- | --- |
| FairPoint Communications, Inc. c/o C T Corporation System, Registered Agent 225 Hillsborough Street Raleigh, NC 27603 | |

## A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served.  You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff) | Date Issued | Time | |
| --- | --- | --- | --- |
| John T. O'Neal Donaldson & Black, P.A. 208 West Wendover Avenue Greensboro, NC 27401 Telephone: 336-273-3812 | | | ☐ AM ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

| ☐ ENDORSEMENT This Summons was originally issued on the date indicated above and returned not served.  At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time | |
| --- | --- | --- | --- |
| | | | ☐ AM ☐ PM |
| | Signature | | |
| | ☐ Deputy CSC | ☐ Assistant CSC | ☐ Clerk Of Superior Court |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial.  The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

(Over)

146 76 Plaintiff

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fear Point Communications, Inc.

c/o CT Corporation, Registered Agent

225 Hillsborough Street

Raleigh, NC 27603

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X Xon M. Faulkner
☐ Agent
☐ Addressee

B. Received by ( Printed Name )     C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

[postmark: SOUTH RALEIGH ANNEX  JUN 2005  276XX  1-5 06 05  11 12 13 14 15 16]

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)     7003 2260 0000 4979 1921

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

NORTH CAROLINA                    IN THE GENERAL COURT OF JUSTICE
                                  SUPERIOR COURT DIVISION
MECKLENBURG COUNTY                03 CvS 10328

ROBERT LOWINGER, Individually      )
and On Behalf of All Others        )
Similarly Situated,                )
                                   )
             Plaintiffs,           )
                                   )
      v.                           )        AFFIDAVIT OF SERVICE
                                   )
EUGENE B. JOHNSON, DANIEL G.       )
BERGSTEIN, KELSO INVESTMENT        )
ASSOCIATES V, L.P., KELSO EQUITY   )
PARTNERS V, L.P., FRANK K. BYNUM, JR., )
GEORGE E. MATELICH, KELSO & COMPANY )
and FAIRPOINT COMMUNICATIONS, INC., )
                                   )
             Defendants.           )
                                   )

      John T. O'Neal, being first duly sworn, deposes and says that:

      1.    I am the attorney for the Plaintiffs in this pending civil action.

      2.    A copy of the Summons and Complaint was deposited in the U. S. Post Office,
postage prepaid, on June 10, 2005, by certified mail, return receipt requested.

      3.    The copy of the Summons and Complaint was mailed to:

                  Eugene B. Johnson
                  c/o FairPoint Communications, Inc.
                  521 East Morehead Street, Suite 250
                  Charlotte, NC 28202

      4.    Process was in fact received on June 13, 2005, as evidenced by the attached
return receipt.

                                  _____
                                  John T. O'Neal
                                  N. C. State Bar No. 23446
                                  Donaldson & Black, P.A.
                                  208 West Wendover Avenue
                                  Greensboro, North Carolina 27401
                                  336-273-3812

Sworn to and subscribed before me,
this the 15th day of June 2005.



_____
Notary Public

My Commission Expires: _April 24 2007_

DAPHNE W. HAMMILL
NOTARY PUBLIC
GUILFORD COUNTY, N. C.
My Commission Expires April 24, 2007

# STATE OF NORTH CAROLINA

<u>MECKLENBURG</u> County

File No.
05 CvS 10XX

In The General Court Of Justice
☐ District ☒ Superior Court Division

---

*Name Of Plaintiff*
ROBERT LOWINGER, Individually, et al

*Address*

*City, State, Zip*

**VERSUS**

*Name Of Defendant(s)*
EUGENE B. JOHNSON, DANIEL G. BERGSTEIN, KELSO INVESTMENT ASSOCIATES V, L.P., KELSO EQUITY PARTNERS V, L.P., et al

## CIVIL SUMMONS

☐ **ALIAS AND PLURIES SUMMONS**

G.S. 1A-1, Rules 3, 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

---

## To Each Of The Defendant(s) Named Below:

*Name And Address Of Defendant 1*

Eugene B. Johnson
c/o FairPoint Communications, Inc.
521 East Morehead Street, Suite 250
Charlotte, NC 28202

*Name And Address Of Defendant 2*

---

### A Civil Action Has Been Commenced Against You!

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

---

*Name And Address Of Plaintiff's Attorney (If None, Address Of Plaintiff)*

John T. O'Neal
Donaldson & Black, P.A.
208 West Wendover Avenue
Greensboro, NC 27401
Telephone: 336-273-3812

*Date Issued*

*Time* ☐ AM ☐ PM

*Signature*

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

---

☐ **ENDORSEMENT**
This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days.

*Date Of Endorsement*

*Time* ☐ AM ☐ PM

*Signature*

☐ Deputy CSC ☐ Assistant CSC ☐ Clerk Of Superior Court

---

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $15,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

AOC-CV-100, Rev. 10/01
© 2001 Administrative Office of the Courts

*(Over)*

Case 3:05-cv-00316-FDW-CH   Document 1-1   Filed 07/11/05   Page 27 of 30

## SENDER: COMPLETE THIS SECTION

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Eugene B. Johnson
c/o Fair Point Communications, Inc.

531 East Morehead Street
Suite 250
Charlotte, NC 28202

2. Article Number
(Transfer from service label)

7004 1160 0004 8278 5948

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

## COMPLETE THIS SECTION ON DELIVERY

A. Signature

X _Ashley Reichle_   ☐ Agent   ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

Wendy Reichle   6-13-05

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☒ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

NORTH CAROLINA

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

MECKLENBURG COUNTY

2005 JUN 23 AM 11: 12   05 CvS 10328

MECKLENBURG COUNTY C.S.C.

BY_____

ROBERT LOWINGER, Individually
and On Behalf of All Others
Similarly Situated,

             Plaintiffs,

        v.

EUGENE B. JOHNSON,  DANIEL G.
BERGSTEIN, KELSO INVESTMENT
ASSOCIATES V, L.P., KELSO EQUITY
PARTNERS V, L.P., FRANK K. BYNUM, JR.,
GEORGE E. MATELICH, KELSO & COMPANY
and FAIRPOINT COMMUNICATIONS, INC.,

             Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AFFIDAVIT OF SERVICE
UPON DEFENDANT DANIEL
G. BERNSTEIN

John T. O'Neal, being first duly sworn, deposes and says that:

1.     I am the attorney for the Plaintiffs in this pending civil action.

2.     A copy of the Summons and Complaint was deposited in the U. S. Post Office, postage prepaid, on June 10, 2005, by certified mail, return receipt requested.

3.     The copy of the Summons and Complaint was mailed to:

             Daniel G. Bertstein
             Paul, Hastings, Janpfsky & Walker,m LLP
             75 East 55th Street
             New York, New York  10022

4.     The return receipt bears the "7-14-05" in the box marked "Date of Delivery", however, this date is in error.

5.     Process was in fact received on June 14, 2005, as evidenced by (1) the attached printout from the United States Postal Service website and (2) the June 16, 2005 postmark date that appears on the return receipt.

This the 27th day of June, 2005.

                               John T. O'Neal

Donaldson & Black, P.A.
208 West Wendover Avenue
Greensboro, North Carolina 27401
Phone: 336-273-3812

Sworn to and subscribed before me,
this the _27th_ day of June 2005.

_Daphne S. Hammill_
              Notary Public

My Commission Expires: _April 24, 2007_

DAPHNE W. HAMMILL
NOTARY PUBLIC
GUILFORD COUNTY, N. C.
My Commission Expires April 24, 2007



## UNITED STATES POSTAL SERVICE®

# Track & Confirm

### Current Status

You entered 7004 1160 0004 8278 5931

Your item was delivered at 3:04 pm on June 14, 2005 in NEW YORK, NY 10022.

( Shipment Details > )

### Notification Options

▸ Track & Confirm by email    What is this?    Go >

### Track & Confirm

Enter label number:

_____

**Track & Confirm FAQs**



POSTAL INSPECTORS
Preserving the Trust

**site map   contact us   government services**
Copyright © 1999-2002 USPS. All Rights Reserved. Terms of Use  Privacy Policy

Case 3:05-cv-00316-FDW-CH   Document 1-1   Filed 07/11/05   Page 30 of 30