# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:05CV316-H

| | |
|---|---|
| ROBERT LOWINGER, Individually and<br>On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>EUGENE B. JOHNSTON, DANIEL G.<br>BERGSTEIN, KELSO INVESTMENT<br>ASSOCIATES V, L.P., KELSO EQUITY<br>PARTNERS V., L.P., FRANK K. BYNUM,<br>GEORGE E. MAELICH, KELSO &<br>COMPANY and FAIRPOINT<br>COMMUNICATIONS, INC.,<br><br>Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiff's ... Motion to Remand [including memorandum]" (document #2) filed August 10, 2005; and the "Defendants' Brief in Opposition to Motion to Remand" (document #8) filed September 9, 2005. On September 27, 2005, the Plaintiff filed his "Reply ..." (document #10).

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiff's Motion to Remand, as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a securities class action brought by Plaintiff Robert Lowinger, in his own behalf and on behalf of all other potential Plaintiffs who purchased stock in Defendant FairPoint Communications, Inc. ("FairPoint") through its initial public offering ("IPO") on February 3, 2005,

and alleging claims solely under the Securities Act of 1933 ("the 1933 Act").[1]

FairPoint is a provider of communications services incorporated in 1991 for the purpose of acquiring and operating telephone companies in rural markets. After several years of growth, on February 3, 2005, FairPoint issued its IPO, selling 25,000,000 shares of common stock to public investors at a price of $18.50 per share. At the time of the IPO, FairPoint owned and operated 26 rural telephone companies in 17 states.

Pursuant to the requirements of the 1933 Act, prior to conducting the IPO, FairPoint filed a prospectus with the Securities and Exchange Commission ("SEC") as part of a Form S-1 registration statement ("Registration Statement"). FairPoint's prospectus included descriptions and disclosures regarding its business, detailed its financial performance for 2003 and the first three quarters of 2004, and "pre-released" key financial results for the final quarter of 2004 – the accuracy of which Plaintiff does not challenge. However, the prospectus also included disclosures regarding FairPoint's access line counts and digital subscriber line ("DSL") business; the alleged inaccuracy of these disclosures lies at the heart of the Complaint.

The prospectus included third quarter 2004 data with regard to the number of access lines it provided its customers, and disclosed that the company had experienced a net access line loss of 2.6% for the year ending September 30, 2004. FairPoint warned that it "m[ight] continue to experience net access line loss in [its] markets," and that its "inability to retain access lines could adversely affect [its] business and results of operations." FairPoint further disclosed that "rural telephone companies have experienced a loss of access lines due to challenging economic conditions,

---

[1] At the time of the IPO, Defendant Eugene B. Johnson was Chairman of FairPoint's Board of Directors and its Chief Executive Officer, Defendants Daniel G. Bergstein, Frank K. Bynum, and George E. Maelich were members of FairPoint's Board of Directors, and Defendants Kelso Investment Associates V, L.P., Kelso Equity Partners V., L.P., and Kelso & Company were "investment funds" that sold FairPoint shares.

increased competition and the introduction of digital subscriber line services," and that the it "[had] not been immune to these conditions." FairPoint concluded its disclosures concerning the access lines by stating that "[d]espite [its] net losses of access lines, [it] has generated growth in [its] revenues in every year since 1999."

The Plaintiff alleges that these disclosures were materially false or misleading because FairPoint failed to disclose that it was intentionally slowing the construction of additional DSL lines and that the rate of loss of DSL customers was accelerating, that is, that FairPoint was losing DSL customers at an increasing rate.

After the IPO, FairPoint's stock price decreased.

On June 6, 2005, the Plaintiff filed his class action Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging claims under the 1933 Act and contending that his, and the other participants in the IPO, losses in FairPoint stock was the result of the misleading statements in FairPoint's prospectus.

On July 11, 2005, the Defendants removed the state court action to federal court, alleging federal question jurisdiction.

On August 10, 2005, the Plaintiff filed his Motion to Remand, which presents a single issue: whether securities class actions brought entirely under the 1933 Act are removable to federal court.

The Plaintiff's motion has been fully briefed as set forth above and is, therefore, ripe for determination.

## II. DISCUSSION

At the outset, the undersigned notes that the Plaintiff's Motion to Remand is timely. See 28 U.S.C. § 1447(c) (motion to remand must be filed within 30 days of filing of notice of removal and

the court shall order remand if removal was improper).

28 U.S.C. § 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

The existence of subject matter jurisdiction is a threshold issue, and absent a proper basis for subject matter jurisdiction, a removed case must be remanded to state court. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 96 (1998). Accord Jones v. American Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999); and Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The parties seeking federal jurisdiction, in this case, the Defendants, have the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

It is well-established that "[t]he subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000), citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Accord Darcangelo v. Verizon Communications, Inc., 292 F.3d 181, 186 (4th Cir. 2002) ("In general, an action filed in state court may be removed to federal court only if it might have been brought in federal court originally"). There is no dispute that basis for federal subject matter jurisdiction, if any, must arise under what is commonly called "federal question" jurisdiction.

Prior to 1998, Section 22(a) of the 1933 Act, 15 U.S.C. § 77(v), established concurrent state and federal jurisdiction for claims under that Act, and provided, therefore, that claims arising under the 1933 Act filed in state court were not removable to federal court. This afforded plaintiffs

unfettered control over where to litigate their 1933 Act claims – although, for practical reasons, nearly all such cases were litigated in federal court.[2]

In 1995, Congress enacted the Private Securities Litigation Reform Act of 1995 ("the PSLRA"), which heightened pleading requirements in securities class actions, imposed a mandatory discovery stay during the pendency of motions to dismiss, limited the ability of "professional plaintiffs" to participate in class action litigation, provided protections for class members, and created a "safe harbor" for certain forward-looking statements in corporate disclosures. See 15 U.S.C. §§ 77z-1(b)(1), 77z-2. "These mechanisms were intended to enact reforms to protect investors and maintain confidence in our capital markets by discouraging frivolous litigation." Lander v. Hartford Life & Annuity Ins. Co., 251 F.3d 101, 107 (2d Cir. 2001). The PSLRA applies to all securities actions pending in federal court, whether originally filed there or upon removal from state court. See 15 U.S.C. § 77z-1(a).

In 1998, and acting out of concern that plaintiffs were evading the restrictions of the PSLRA by bringing their class action cases in state court, Congress enacted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. No. 105-353, 112 Stat. 3227 (1998), in order "to make Federal court the exclusive venue for securities fraud class action litigation." H. R. Rep. No. 105-640, at 10 (1998) (emphasis added).

In furtherance of this goal, SLUSA amended the jurisdictional and venue provisions of the 1933 Act, and created an exception, whereby certain 1933 Act claims filed in state court are removable. Specifically, after the enactment of SLUSA, Section 22(a) of the 1933 Act, 15 U.S.C.

---

[2] Unlike the 1933 Act, claims under the Securities Exchange Act of 1934 (codified as amended at 15 U.S.C.A. § 78a) ("1934 Act") were (and are) subject to exclusive federal jurisdiction. 15 U.S.C. § 78aa. Since most complaints asserting claims under the 1933 Act also included claims under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. 240.10b-5, nearly all federal securities class actions were filed in federal court.

§ 77v(a), provides, in pertinent part: "*[e]xcept as provided in Section 16(c),* no case arising under [the 1933 Act] and brought in any State court of competent jurisdiction shall be removed to any court of the United States."[3]

Accordingly, in order to determine which 1933 Act cases are removable under the SLUSA exception, the Court must then look to Section 16(c):

> (c) Removal of Covered Class Actions – any <u>covered class action brought in any state court involving a covered security, as set forth in subsection (b)</u>, shall be removable to the federal district court for the district in which the action is pending, and shall be subject to subsection (b).

15 U.S.C. § 77(p)(c)(emphasis added).

Section 16(b) (referred to in Section 16(c) as "subsection b") provides that certain class actions that arise under state law and that might be otherwise removable under Section 16(c) are preempted by federal law:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77(p)(b).

The parties agree that this case is a "covered class action," that was brought in state court, and that it involves a "covered security," as defined by Section 16(c). The Plaintiff contends, nevertheless, that removal was improper because Section 16(b) applies to causes of action arising under state "statutory or common law" and that his claims, which arise solely under federal law, are outside of the Section 16(c) exception and remain unremovable. <u>See</u> "Plaintiff's ... Motion to

---

[3] The bolded portion of § 77v(a) was added in 1998 by SLUSA.

Remand" at 7 (document #2). As the Defendants point out in their briefs, however, Section 16(b) does not narrow the scope of cases removable under Section 16(c), except in its preemption of certain state law claims that might otherwise be removed.

Although there is no Fourth Circuit authority on point, the Second Circuit Court of Appeals has held that class actions arising entirely under the 1933 Act are removable under Section 16(c). See Cal. Pub. Emples. Ret. Sys. v. WorldCom, Inc., 368 F.3d 86, 97 (2d Cir. 2004) ("Section 16(c) of the [1933] Act excepts class actions brought in state court from the scope of the nonremoval provision and provides that those class actions shall be removable to the Federal district court for the district in which the action is pending"), cert. denied, 125 S.Ct. 862 (2005). Accord Brody v. Homestore, Inc., 240 F. Supp. 2d 1122, 1124 (C.D. Cal. 2003) (class actions under 1933 Act removable).[4]

Finally, there is no question that permitting timely removal of class actions consisting of 1933 Act claims is consistent with Congress' express intention "to make Federal court the exclusive venue for securities fraud class action litigation." H. R. Rep. No. 105-640, at 10 (1998) (emphasis added).

In short, and withholding any judgment as to the merits of the Plaintiff's claims, there is a basis for federal question jurisdiction, removal was proper, and the Plaintiff's Motion to Remand must therefore be denied.

---

[4] Although recognizing that unpublished decisions have no precedential value, the undersigned notes that other district courts have recently held that Section 16(c) permits removal of class actions under the 1933 Act. See In re King Pharms., Inc., 2004 U.S. Dist. LEXIS 20222 (E.D. Tenn. Feb. 6, 2004); Kulinski v. Am. Elec. Power Co., 2003 U.S. Dist. LEXIS 26447 (S.D. Ohio Sept. 19, 2003); Alkow v. TXU Corp., 2003 U.S. Dist. LEXIS 7900 (N.D. Tex. May 8, 2003); and In re WorldCom Sec. Litig., 2003 U.S. Dist. LEXIS 2790 (S.D.N.Y. March 4, 2003).

### III. ORDER

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Motion to Remand" (document #2) is **DENIED**.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.


**SO ORDERED.**

**Signed: October 13, 2005**

*Carl Horn, III* (signature)

Carl Horn, III
United States Magistrate Judge