# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:05CV316-C

| | |
|---|---|
| ROBERT LOWINGER, Individually and On Behalf of All Others Similarly Situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>EUGENE B. JOHNSTON, DANIEL G. BERGSTEIN, KELSO INVESTMENT ASSOCIATES V, L.P., KELSO EQUITY PARTNERS V., L.P., FRANK K. BYNUM, GEORGE E. MAELICH, KELSO & COMPANY and FAIRPOINT COMMUNICATIONS, INC., )<br><br>Defendants. ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the "Plaintiff's ... Emergency Motion to Stay Briefing ... of Defendant's Motion to Dismiss until the Court Rules on Plaintiff's Motion to Remand" (document #30) and "Memorandum ..." (document #31), both filed December 22, 2005; and the Defendants' "Response ..." (document #32) filed December 23, 2005.

As discussed below, this matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

This is a securities class action brought by Plaintiff Robert Lowinger, in his own behalf and on behalf of all other potential Plaintiffs who purchased stock in Defendant FairPoint Communications, Inc. ("FairPoint") through its initial public offering ("IPO") on February 3, 2005, and alleging claims solely under the Securities Act of 1933 ("the 1933 Act").[1]

---

[1] At the time of the IPO, Defendant Eugene B. Johnson was Chairman of FairPoint's Board of Directors and its Chief Executive Officer, Defendants Daniel G. Bergstein, Frank K. Bynum, and George E. Maelich were members of FairPoint's Board of Directors, and Defendants Kelso Investment Associates V, L.P., Kelso Equity

FairPoint is a provider of communications services incorporated in 1991 for the purpose of acquiring and operating telephone companies in rural markets. After several years of growth, on February 3, 2005, FairPoint issued its IPO, selling 25,000,000 shares of common stock to public investors at a price of $18.50 per share. At the time of the IPO, FairPoint owned and operated 26 rural telephone companies in 17 states.

Pursuant to the requirements of the 1933 Act, prior to conducting the IPO, FairPoint filed a prospectus with the Securities and Exchange Commission ("SEC") as part of a Form S-1 registration statement ("Registration Statement"). FairPoint's prospectus included descriptions and disclosures regarding its business, detailed its financial performance for 2003 and the first three quarters of 2004, and "pre-released" key financial results for the final quarter of 2004 – the accuracy of which Plaintiff does not challenge. However, the prospectus also included disclosures regarding FairPoint's access line counts and digital subscriber line ("DSL") business; the alleged inaccuracy of these disclosures lies at the heart of the Complaint.

The prospectus included third quarter 2004 data with regard to the number of access lines it provided its customers, and disclosed that the company had experienced a net access line loss of 2.6% for the year ending September 30, 2004. FairPoint warned that it "m[ight] continue to experience net access line loss in [its] markets," and that its "inability to retain access lines could adversely affect [its] business and results of operations." FairPoint further disclosed that "rural telephone companies have experienced a loss of access lines due to challenging economic conditions, increased competition and the introduction of digital subscriber line services," and that the it "[had] not been immune to these conditions." FairPoint concluded its disclosures concerning the access lines by stating that "[d]espite [its] net losses of access lines, [it] has generated growth in [its]

---

Partners V., L.P., and Kelso & Company were "investment funds" that sold FairPoint shares.

2

revenues in every year since 1999."

The Plaintiff alleges that these disclosures were materially false or misleading because FairPoint failed to disclose that it was intentionally slowing the construction of additional DSL lines and that the rate of loss of DSL customers was accelerating, that is, that FairPoint was losing DSL customers at an increasing rate.

After the IPO, FairPoint's stock price decreased.

On June 6, 2005, the Plaintiff filed his class action Complaint in the Superior Court of Mecklenburg County, North Carolina, alleging claims under the 1933 Act and contending that his, and the other participants in the IPO, losses in FairPoint stock was the result of the misleading statements in FairPoint's prospectus.

On July 11, 2005, the Defendants removed the state court action to federal court, alleging federal question jurisdiction.

This case was initially assigned to the undersigned, however, the parties did not indicate whether they consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c).

On August 10, 2005, the Plaintiff filed his Motion to Remand (document #2), which presented a single issue: whether securities class actions brought entirely under the 1933 Act are removable to federal court.

On October 13, 2005, the undersigned <u>denied</u> the Plaintiff's Motion to Remand. See "Memorandum and Order" at 7 (document #11) ("there is no question that permitting timely removal of class actions consisting of 1933 Act claims is consistent with Congress' express intention 'to make Federal court the exclusive venue for securities fraud class action litigation'").

On October 28, 2005, the Plaintiff filed a "Refusal To Proceed Before a U.S. Magistrate Judge" (document #15), and this case was reassigned to the Honorable Robert J. Conrad, Jr., and

3

referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B).

The same day, the Plaintiff filed an "Objection ... " (document #13) which seeks "clear error" review by the District Court of the undersigned's denial of the Motion to Remand. The Plaintiff's appeal is presently pending before Judge Conrad.

On November 14, 2005, the Defendants filed their "Motion to Dismiss" (document #17) and "Memorandum in Support" (document #18), which are referred to the undersigned on a recommendation basis.

On December 15, 2005, the Court signed the parties' consent "Preliminary Scheduling Order Relating to Defendants' Motion to Dismiss" (document #25) which set the due date for Plaintiff's response brief to January 6, 2006, and the defendants' reply brief to January 24, 2006.

On December 22, 2005, however, the Plaintiff filed the subject "Emergency Motion to Stay Briefing ... of Defendant's Motion to Dismiss until the Court Rules on Plaintiff's Motion to Remand," contending that those briefs are unnecessary until Judge Conrad rules upon the Plaintiff's Motion to Remand. The Plaintiff admits that whether to issue such a stay is within the Court's discretion.

Moreover, as the Defendants point out in their present brief, the Plaintiff initially consented to respond to the Motion to Dismiss without regard to the timing of a final ruling on the Motion to Remand, and there has been no change in the relevant jurisdictional facts or law that the undersigned considered in denying the Motion to Remand.

In short, staying briefing on the Motion to Dismiss will result only in further unnecessary delay. Accordingly, the Plaintiff's "Emergency Motion to Stay Briefing" will be denied. The parties' deadlines for filing their respective response and reply briefs will be extended one week, that is, roughly the same number of days that the Emergency Motion to Stay Briefing was pending.

**NOW, THEREFORE, IT IS ORDERED:**

1. The Plaintiff's "Emergency Motion to Stay Briefing of Defendant's Motion to Dismiss until the Court Rules on Plaintiff's Motion to Remand" (document #30) is **DENIED**.

2. The Plaintiff shall file his response to the Defendants' Motion to Dismiss on or before January 13, 2006, and the Defendants shall file their reply brief on or before January 31, 2006.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO ORDERED.**

**Signed: December 27, 2005**

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge